**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
**Civil Case No. 0:25-cv-61218-WPD**
**DIMITROULEAS / AUGUSTIN-BIRCH**

**NIHAL MICHAEL GAUTAM,**

Plaintiff, pro se,

v.

**SHERIFF GREGORY TONY, et al.,**

Defendants.

FILED BY VB D.C.
SEP 22 2026
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

**PLAINTIFF'S SPECIFIC OBJECTIONS TO REPORT AND RECOMMENDATION [DE 51]**

Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b)

## INTRODUCTION

Plaintiff Nihal Michael Gautam respectfully objects to the Report and Recommendation entered September 8, 2026 ("R&R") [DE 51], which recommends dismissal of the Fifth Amended Complaint ("FAC") [DE 50] in its entirety, with prejudice. The objections below identify specific findings and recommendations for de novo review. Plaintiff does not ask the Court to reweigh evidence at the screening stage. He asks the Court to apply the Rule 12(b)(6) / 28 U.S.C. § 1915(e)(2) standard to the allegations actually pleaded in DE 50, accepting well-pleaded factual allegations as true and drawing reasonable inferences in Plaintiff's favor.

The recommendations rest on several distinct premises that require separate review. The probable-cause ruling disposes of Counts I and II. The force and restraint rulings dispose of Counts III and IV and supply the stated basis for dismissing Counts V and X. The medical-need

ruling disposes of Count VI and supplies a basis for dismissing Count VIII. Count VII depends on the underlying violations and the separate policy/custom allegations pleaded there. A ruling permitting one claim to proceed would not automatically establish another claim, but it would require reconsideration of recommendations that depend on the rejected premise. The force, continued-restraint, and medical-response claims require review even if the Court finds a lawful basis for arrest.

## STANDARD OF REVIEW

A district judge must determine de novo the portions of a magistrate judge's report to which specific objection is made. Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1). Southern District of Florida Magistrate Judge Rule 4(b) likewise requires specific objections stating the basis and supporting authority and permits up to twenty pages absent prior permission.

At screening under § 1915(e)(2), the failure-to-state-a-claim inquiry applies the Rule 12(b)(6) plausibility standard. The Court accepts well-pleaded factual allegations as true and construes them in the light most favorable to the plaintiff; it need not accept legal conclusions or unsupported assertions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1066 (11th Cir. 2017). A pro se pleading is liberally construed, although the Court may not rewrite it. *Jacob v. Mentor Worldwide, LLC*, 40 F.4th 1329, 1334 (11th Cir. 2022). These objections identify allegations already in DE 50 and explain their significance under the applicable standards. They do not ask the Court to resolve disputed recordings or treat missing records as proof of misconduct.

**OBJECTION 1**

**COUNT II REQUIRES ANALYSIS OF THE PLEADED FACTS UNDER THE DISORDERLY CONDUCT STATUTE**

Plaintiff objects to the recommendation dismissing Count II. R&R at 5-6. The R&R reasons that because Plaintiff admits activating the Shell station's emergency fuel shutoff when there was no fuel-pump emergency, "law enforcement would believe" that he committed "a crime such as" disorderly conduct under Fla. Stat. § 877.03. Id. at 6. That conclusion treats the admitted act itself as sufficient probable cause without analyzing whether, under the surrounding facts pleaded as true, the act plausibly satisfied the narrowed Florida offense.

The FAC does not plead a violent disturbance. It alleges that the clerk described Plaintiff as polite, that the clerk identified the shutoff and difficulty resetting the pumps as the store-related problem, that no person was threatened or injured, that Fire Rescue personnel reported no damage or misconduct against them, and that available footage showed no fighting, striking, threatening, or pre-seizure flight. FAC ¶¶ 46-52(a). The FAC further alleges that officers knew the shutoff facts, nevertheless twice told Plaintiff he was not under arrest, told him he would be on his way, offered a case card reflecting anticipated release, rejected a Baker Act disposition, and continued searching for a criminal disposition after the seizure began. FAC ¶¶ 57(k), 68, 89-94, 215-223.

Probable cause is objective and requires less than proof sufficient to convict. An officer need not correctly name the offense at the moment of arrest, and probable cause for an offense other than the announced charge can justify the arrest. *Devenpeck v. Alford*, 543 U.S. 146, 152-55 (2004). Plaintiff therefore does not rely on the officers' uncertainty, anticipated-release statements, or the later change from affray to disorderly conduct as independently defeating probable cause. The question is whether the facts known at the relevant time supplied an

objectively reasonable basis to believe an offense had occurred. The R&R identifies § 877.03 but does not explain how the circumstances pleaded satisfy that inquiry under Florida's construction of the statute.

Section 877.03 covers specified acts affecting public morals, decency, or peace, as well as brawling, fighting, and other conduct constituting a breach of the peace. Its application is narrowed by Florida decisions, particularly when speech supplies the asserted offense. *State v. Saunders*, 339 So. 2d 641, 643-44 (Fla. 1976). In *St. Fleury v. State*, 244 So. 3d 330 (Fla. 4th DCA 2018), the court reversed a disorderly-conduct conviction arising from loud, boisterous behavior in a pet store because the evidence did not establish the required danger or incitement. The court distinguished affirmative physical aggression and held that later, post-arrest violence could not supply the basis for the earlier disorderly-conduct charge.

*St. Fleury* concerned the sufficiency of trial evidence and did not decide whether activating a fuel shutoff supplies probable cause. Plaintiff admits a physical act affecting the pumps, including the clerk's reported difficulty resetting them; he does not argue that all nonviolent interference with a business is protected speech. FAC ¶¶ 47-48. His narrower objection is that the R&R treats that act as necessarily establishing probable cause without addressing the surrounding allegations: the reversible mechanism, absence of attributed physical damage or injury, absence of threats or a crowd disturbance, and the witness accounts available to the officers. FAC ¶¶ 46-52(a), 217-223. The Court should assess whether those circumstances support the statutory conduct offense rather than treating disruption alone as dispositive. Nor can alleged running after handcuffing retroactively justify the initial arrest. FAC ¶¶ 83, 94, 216, 219.

At minimum, Count II should not be dismissed at screening on the ground that the admitted shutoff activation necessarily established probable cause for disorderly conduct. The

District Court should conduct de novo review of § 877.03 against the pleaded circumstances and reject the recommendation as to Count II.

**OBJECTION 2**

**COUNT I REQUIRES RECONSIDERATION OF PROBABLE CAUSE AND THE ALTERNATIVE NIEVES THEORY**

Plaintiff objects to dismissal of Count I. R&R at 4-5. The R&R correctly recognizes that filing civil-rights litigation and petitioning government are protected activities, and that retaliatory-arrest claims generally require absence of probable cause. See *Nieves v. Bartlett*, 587 U.S. 391, 402 (2019). If the District Court rejects the R&R's probable-cause conclusion for the reasons stated above, the principal stated ground for dismissing Count I falls with it.

The FAC also pleaded an alternative Nieves theory. FAC ¶ 206. The R&R quotes only the information-and-belief allegation that custodial arrest is not ordinarily made for materially comparable nonviolent conduct, then states that Plaintiff pleaded no facts supporting that belief. R&R at 5. Paragraph 206, however, also pleads objective features of the enforcement decision: after officers learned the material shutoff facts, they twice stated Plaintiff was not under arrest, told him he would be released, offered a case card, rejected a Baker Act disposition, remained unable on the recordings to identify the applicable statute before the seizure, received no civilian request for arrest, and then made the custodial decision after repeated discussion of Plaintiff's pending federal litigation. FAC ¶ 206.

*Gonzalez v. Trevino*, 602 U.S. 653 (2024) (per curiam), rejected a requirement of virtually identical, identifiable comparators. It did not eliminate the need for objective facts supporting differential enforcement, or hold that evidence of retaliatory motive alone satisfies the Nieves exception. Plaintiff relies on the pleaded release statements, case-card offer, and ensuing enforcement sequence as factual support for the inference in ¶ 206, and requests consideration of

those facts together. He does not represent that DE 50 contains the historical enforcement survey presented in Gonzalez.

Justice Jackson's concurrence, joined by Justice Sotomayor, further explained that unusual arrest procedures and the timing and events leading to arrest may support a showing of differential treatment. Gonzalez, 602 U.S. 653 (2024) (Jackson, J., concurring). Plaintiff offers that reasoning as persuasive support, not as a holding that timing alone satisfies the exception. The alleged decision to continue custody after anticipated release, followed by further charge selection, is the connection between ¶ 206 and that reasoning. The District Court should decide whether the pleaded objective circumstances plausibly support the exception, without imposing a categorical requirement of a statistical survey or named comparators.

Plaintiff requests rejection of the probable-cause basis for dismissing Count I if the Court sustains Objection 1, followed by consideration of Count I's remaining allegations, including defendant-specific knowledge and causation in FAC ¶¶ 207-211(d). Alternatively, he requests de novo consideration of the complete ¶ 206 allegations under Nieves and Gonzalez. Discovery would refine those allegations, but Plaintiff recognizes that the present pleading must first satisfy the plausibility standard.

**OBJECTION 3**

**COUNTS III AND IV REQUIRE REVIEW OF THE FULL FORCE AND RESTRAINT SEQUENCE**

Plaintiff objects to dismissal of Counts III and IV. R&R at 6-9. These claims require independent review even assuming the arrest was supported by probable cause. The R&R states the Graham factors, but its application reduces the pleaded force to a takedown and painful handcuffing and then characterizes it as commonplace and de minimis. R&R at 7-8. DE 50

alleges compliance at the moment force began, followed by several distinct stages of force and continued restraint.

Count III alleges a minor, nonviolent underlying offense; an unarmed and outnumbered Plaintiff who had not struck or threatened anyone; no allegation of running, threat, or violence before force began; Plaintiff walking back toward deputies in the direction they had ordered, with hands raised and visible; multiple deputies removing the backpack, bringing him down, handcuffing him, requesting and applying ankle shackles under changing commands, and carrying him to a patrol vehicle. FAC ¶¶ 231-240. The FAC alleges that the force was accompanied by frustration and anger rather than an articulated immediate safety threat and that the sequence initiated the wrist, hand, and ankle injuries later documented at intake. Id.

Graham requires attention to the severity of the alleged offense, immediate threat, active resistance or flight, need for force, relationship between need and force used, and injury. *Graham v. Connor*, 490 U.S. 386, 396 (1989); *Sebastian v. Ortiz*, 918 F.3d 1301, 1308 (11th Cir. 2019). Eleventh Circuit law also recognizes that force that may be permissible to obtain control can become gratuitous after a person is secured and nonresisting. *Lee v. Ferraro*, 284 F.3d 1188, 1198-1200 (11th Cir. 2002); *Hadley v. Gutierrez*, 526 F.3d 1324, 1330 (11th Cir. 2008). Plaintiff's allegation is not that every ordinary takedown or handcuffing is unconstitutional; it is that the amount and continuation of force were disproportionate under the circumstances pleaded.

*Brooks v. Miller*, 78 F.4th 1267 (11th Cir. 2023), supplies a particularly relevant comparison. The court allowed an excessive-force claim involving a nonthreatening, nonresisting misdemeanor arrestee to proceed where the officer allegedly slammed him into a vehicle, unnecessarily overtightened his cuffs, and refused adjustment despite pain and numbness.

Brooks had not alleged ongoing, extended, or permanent cuff damage. The court nevertheless rejected qualified immunity on the force claim. Id., slip op. at 5, 25-29. Plaintiff does not equate every takedown with the force in Brooks. He relies on its requirement to evaluate unnecessary force and overtightening in the circumstances actually alleged, rather than treating permanent injury as a prerequisite to every excessive-force claim.

Count IV is even more distinct from "handcuffing alone." It alleges that Loaiza maintained both handcuffs and ankle restraints during extended on-scene custody, transport, and jail arrival; that Plaintiff repeatedly reported wrist, ankle, hand, and walking problems; that adjustment was conditioned on a demanded body position; and that, after arrival at secure jail grounds, Plaintiff stated he could not walk and needed help but was ordered to walk while still restrained. FAC Count IV; FAC ¶¶ 112-127. The FAC further links the prolonged restraints to severe pain, bilateral numbness, inability to close the hand, hand dysfunction, and an urgent medical referral.

The chronology is concrete. Handcuffing began at approximately 12:49 a.m.; the shackle request followed at approximately 12:50:52 a.m.; and Plaintiff still complained of tight restraints at approximately 2:07:36 a.m. and remained restrained during the approximately 2:11 a.m. intake sequence. FAC ¶¶ 77, 120-123, 253. Those allegations place the restraint period at more than an hour, extending beyond the initial takedown and into jail arrival. They do not establish the five-hour station confinement alleged in Sebastian, but they provide a duration that must be considered with notice, need, and injury.

The R&R also states that Plaintiff refused to change position and that the cuffs remained tight because of an escape concern. R&R at 9, citing FAC ¶¶ 116-117. Those paragraphs report Loaiza's conditional offer and statement that Plaintiff might jump out; they also allege that

Plaintiff asked for relief from the leg restraint first and that neither restraint was promptly relieved. Plaintiff accepts that officers may impose reasonable safety conditions before opening a patrol-car door. The objection is that the quoted rationale does not itself establish the reasonableness of every later restraint decision, including after arrival at secure jail grounds and renewed complaints that Plaintiff could not walk. FAC ¶¶ 120-127. Nor should a reported officer statement automatically become a finding that all continued restraint was justified.

*Sebastian v. Ortiz,* 918 F.3d 1301, 1309-12 (11th Cir. 2019), cautions that handcuffing alone supports an excessive-force claim only in exceptional circumstances. Its allegations of more than five hours at the station and permanent nerve injury are more severe than those presently pleaded here. Plaintiff does not allege diagnosed permanent nerve damage. He alleges a broader force sequence and continued wrist and ankle restraints despite repeated complaints, with severe pain, impaired hand function, difficulty walking, and a later urgent referral. FAC ¶¶ 112-132, 231-248. Those allegations should be evaluated together under Graham and Brooks. To the extent the Fourth Amendment ceased to govern during the transition into pretrial detention, Count IV alternatively invokes the objective force standard in *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015). That alternative force theory does not replace the subjective standard governing Count VI.

The District Court should therefore reject the recommendation as to Counts III and IV and evaluate the full pleaded sequence under the Graham/Kingsley framework rather than the narrower factual summary used in the R&R.

## OBJECTION 4
## COUNTS V AND X DEPEND ON THE FORCE AND RESTRAINT RULINGS

The R&R dismisses Count V because no excessive force was plausibly alleged and dismisses Count X for the same reason. R&R at 9, 13. Those rulings are expressly derivative.

Count V alleges more than a single instantaneous use of force: handcuffing at approximately 12:49:29-12:49:35 a.m., the shackle request at approximately 12:50:52 a.m., carrying at approximately 12:51:19-12:51:57 a.m., and continued custody. FAC ¶ 253. The allegations concerning Tenaglia, Gallimore, Zinglo, and Forsberg describe physical proximity during identified stages; the other defendants are addressed separately in ¶¶ 254(b)-(f). Under Hadley, liability requires presence and a realistic opportunity to intervene. 526 F.3d at 1330. If a force or restraint claim survives, the Court should assess those allegations defendant by defendant. Rejection of the R&R's predicate ruling would not itself establish that every officer had an opportunity to stop every act.

Count X rests on the same force and continued-restraint allegations. The R&R dismissed it solely because it found no excessive force. R&R at 13. If that premise is rejected, the Court should evaluate the battery claim, including its separate allegations of bad faith, malicious purpose, or wanton and willful disregard under Fla. Stat. § 768.28(9)(a). FAC ¶¶ 288-291. Plaintiff requests reconsideration on those terms, not automatic survival based solely on a ruling about probable cause.

**OBJECTION 5**
**COUNT VI REQUIRES CONSIDERATION OF THE URGENT MEDICAL REFERRAL AND EACH DEFENDANT'S RESPONSE**

Plaintiff objects to dismissal of Count VI. R&R at 10. The stated ground is that the complaint does not plausibly allege an objectively serious medical need. DE 50 contains material allegations bearing on that question that the R&R's analysis does not address.

The R&R characterizes the medical allegations as temporary pain, numbness, inability to close the hand, and an elevated pulse, then concludes those injuries are common consequences of tight handcuffing and a stressful situation and did not pose a substantial risk of serious harm.

R&R at 10. But DE 50 pleads objective medical documentation beyond that description. At approximately 4:42 a.m., Wellpath's receiving screening documented a pulse of 115, bilateral hand-and-foot numbness, and pain rated 8/10; the form directed provider contact when pulse remained above 110. Minutes later, Wellpath generated a Staff Referral Form - Medical marked "URGENT" for "numbness/pain to bilateral hands and feet rated 8/10." FAC ¶¶ 131-132.

The FAC further alleges that the produced medical record does not show a timely physician or mid-level examination directed to that urgent bilateral neurological complaint, an outside evaluation, diagnostic testing for those symptoms, or a documented clinical closure of the urgent referral before a later transfer form recorded no active treatment or pending outside consultation. FAC ¶¶ 139-140. Count VI expressly incorporates severe pain, bilateral hand-and-foot numbness, inability to close the hand, fear of nerve injury, difficulty walking, tachycardia, repeated restraint complaints, and Wellpath's own urgent referral. FAC ¶ 258.

The R&R states that Plaintiff "received a medical examination at the jail" and cites ¶ 131. R&R at 10. Paragraph 131 describes the receiving-screening form; paragraph 132 immediately describes the urgent referral generated from that screening. The FAC then distinguishes receiving screening from the provider-level evaluation allegedly not timely performed for the urgent neurological complaint. FAC ¶¶ 131-140, 264. Thus the complaint does not allege that no medical personnel ever saw Plaintiff. It alleges that the objective screening itself identified a potentially serious condition requiring urgent escalation and that the record produced to Plaintiff did not show a timely clinically directed resolution.

A serious medical need may be one diagnosed by a physician as mandating treatment, one so obvious that a lay person would recognize the need for a doctor, or one exacerbated by delay; in each instance it must pose a substantial risk of serious harm if unattended. Brooks, 78

F.4th at 1284. Plaintiff does not equate a staff referral with a physician's diagnosis or contend that the word "URGENT" alone establishes a constitutional violation. His contention rests on the combined allegations of severe bilateral symptoms, impaired hand function and walking, the recorded pain score, and the staff's urgent escalation. FAC ¶¶ 120-132, 258. The referral is relevant to whether those symptoms plausibly required timely attention beyond routine cuff discomfort.

The subjective inquiry remains separate. *Wade v. McDade*, 106 F.4th 1251, 1253, 1262 (11th Cir. 2024) (en banc), requires actual awareness that the defendant's own conduct creates a substantial risk of serious harm, and preserves protection for a reasonable response. Loaiza's alleged knowledge arises from the complaints and conduct he encountered during custody, transport, and intake, including Plaintiff's reported inability to walk and continued restraints. FAC ¶¶ 116-127, 259-263. The later 4:47 a.m. referral corroborates the alleged symptoms; Plaintiff does not use it to impute later-acquired knowledge to Loaiza. The nurse's alleged knowledge rests on her own intake observation, the hand and nerve complaints, and requests for care. FAC ¶¶ 24, 127-128, 260, 263-264. These defendants must be evaluated on their own alleged acts and knowledge.

Brooks also warrants an express distinction on medical care. Although its force claim survived, the officer received qualified immunity on a separate medical-indifference claim concerning an approximately twenty-five-minute drive to a jail where medical attention was available rather than a roadside stop or hospital diversion. 78 F.4th 1267, slip op. at 29-33. Brooks assumed without deciding that the symptoms could constitute a serious medical need; it did not hold that cuff-related numbness can never qualify. Plaintiff alleges a longer period of continued painful restraint before and during transport, renewed inability-to-walk complaints at

secure jail arrival, and a separate intake-nurse response. Those distinctions require examination; general disagreement with the decision to take Plaintiff to jail is not the basis of this objection.

Plaintiff also preserves the distinction between an incomplete production and a failure to provide care. FAC ¶¶ 139-140 and 264 state what the produced records do not show and acknowledge physician-level vital-sign monitoring. Missing documentation alone does not establish that no treatment occurred or that a particular defendant consciously disregarded a risk. Plaintiff relies on those allegations together with his reported symptoms and the particular acts described above. The R&R should not resolve objective seriousness by equating receiving screening with a documented resolution of the urgent physical complaint. If the Court reaches the remaining elements, it should separately consider knowledge, response, and causation as pleaded in FAC ¶¶ 259-266.

The District Court should reject the recommendation as to Count VI. At minimum, the objective seriousness of an urgent bilateral neurological referral should not be resolved against Plaintiff by recharacterizing it as ordinary temporary cuff discomfort.

**OBJECTION 6**
**COUNT VIII PLEADS A PHYSICAL MEDICAL RESPONSE THEORY AGAINST WELLPATH**

Plaintiff objects to dismissal of Count VIII. R&R at 12. The R&R first carries forward its conclusion that Plaintiff had no serious medical need. For the reasons stated in Objection 5, that premise should be rejected at screening.

The R&R then notes that Wellpath provided suicide watch and a mental-health assessment and concludes Plaintiff did not plead that those mental-health services were constitutionally deficient. R&R at 12. But Count VIII is not principally a claim that suicide-watch services were deficient. It alleges Wellpath entity practices governing hospitalization,

utilization review, staffing, intake, referral, documentation, photography, and escalation controlled the response to the restraint-related physical symptoms and urgent referral. FAC ¶¶ 276-280. The FAC points to severe bilateral symptoms, an urgent physical referral, later vital-sign monitoring, no produced timely provider examination directed at the neurological complaint, no outside diagnostic evaluation, and no produced clinical closure of the urgent referral before the later transfer disposition.

A private entity providing jail medical services is subject to municipal-liability principles. *Craig v. Floyd County*, 643 F.3d 1306, 1310-12 (11th Cir. 2011). That requires a constitutional violation caused by an actionable policy or custom; neither employee status nor multiple acts during one incident automatically establishes a widespread custom. Plaintiff relies on the allegations in FAC ¶¶ 193-199 and 276-280, including the asserted referral and escalation practices and the limited pre-incident notice allegations, while recognizing that those allegations must independently satisfy plausibility. The requested correction is to assess the pleaded physical-medical theory, rather than dispose of it by finding that the mental-health services were not deficient.

If the Court sustains the objection to the medical-need ruling, the present derivative reason for dismissing Count VIII falls away. The Court should then decide whether the specific policy/custom and causation allegations state a claim. Plaintiff does not contend that allowing Count VI to proceed would automatically establish Wellpath's entity liability or entitle him to discovery on a conclusory policy allegation.

**OBJECTION 7**

**COUNT VII REQUIRES SEPARATE POLICY AND CAUSATION REVIEW IF A PLEADED PREDICATE VIOLATION SURVIVES**

Plaintiff objects to the derivative dismissal of Count VII. R&R at 10-11. The R&R correctly states that official-capacity liability requires an underlying constitutional violation caused by an official policy or sufficiently widespread custom. See *Grech v. Clayton County*, 335 F.3d 1326, 1329-30 (11th Cir. 2003) (en banc). But after stating that law, the R&R does not determine whether the FAC's policy/custom, notice, deliberate-indifference, or causation allegations are themselves sufficient. Instead it concludes that because no underlying constitutional violation was plausibly pleaded, Sheriff Tony cannot be liable. R&R at 11.

DE 50 identifies the asserted customs and their alleged causal roles in FAC ¶¶ 167-192 and 267-274. It pleads prior force and restraint events, alleged deficiencies in review, and an independent force-and-restraint causation branch. FAC ¶¶ 173-179, 185-190, 273. Written policies requiring proper conduct do not themselves establish a contrary unlawful custom, and Plaintiff does not treat Sheriff Tony's corrective terminations described in ¶ 178 as approval of those individual acts. His pleaded inference concerns the allegedly persistent deficiencies in the underlying review process and the additional notice events. The separate communications/CAD allegations also require a causal connection to a constitutional injury, not merely an inaccurate record.

Plaintiff does not ask the Court to deem municipal liability proven merely because those allegations are lengthy. He asks for the consequence of the R&R's own reasoning: if the District Court concludes that Count II, III, IV, or VI plausibly states an underlying constitutional violation, the sole stated ground for dismissing Count VII no longer disposes of the count. The

Court should then evaluate the Monell allegations on their own terms or permit the claim to proceed to service.

**OBJECTION 8**

**COUNT IX WARRANTS SEPARATE REVIEW OF OFFICIAL CAPACITY LIABILITY AND THE SCOPE OF DISMISSAL**

Plaintiff objects to the recommendation dismissing Count IX with prejudice. R&R at 12-13. He recognizes the general prohibition on fictitious-party pleading and the requirement of a description sufficiently specific to identify and serve a Doe defendant. *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010); *Dean v. Barber*, 951 F.2d 1210, 1215-16 (11th Cir. 1992). The R&R cites prior warnings in DE 17 and DE 25, and identifies the unresolved weakness in FAC ¶ 25: the animal-custody personnel are described across several possible custodial entities. Plaintiff does not claim those earlier warnings were satisfied merely by listing records that might reveal an identity.

But the FAC does substantially identify the transaction and the records from which the responsible custodians are expected to be found. It alleges that deputies took Sunny and Daisy into custody during the arrest; that BSO records say the dogs went to the Deerfield district for later transfer to Animal Control; that no deputy supplied an intake number, location, reclaim procedure, deadline, or disposition notice; that Plaintiff remained incarcerated through May 31; and that after release he learned the dogs had been adopted out and never recovered them. FAC ¶¶ 156-166. Paragraph 25 describes the Doe defendants by function and identifies BSO district logs, property records, Animal Control intake records, microchip records, and shelter disposition records as sources of identity.

The recommendation concerning Sheriff Tony also warrants separate review. The R&R describes liability in a "supervisory capacity" and reasons that Plaintiff has not established

Tony's authority over the unidentified personnel. R&R at 13. But FAC ¶ 16 and Count IX expressly sue Tony only in his official capacity, and ¶ 284 alleges, in the alternative, that BSO-controlled transfer, notice, hold, or reclaim procedures caused the deprivation. An unresolved downstream custodian does not, by itself, answer whether a sufficiently pleaded BSO policy caused a deprivation earlier in the custody chain. The Court should assess that actual policy-and-causation theory. Plaintiff recognizes that official-capacity terminology does not cure an otherwise conclusory policy allegation.

As to the Does, the R&R does not decide whether the asserted property interest or notice theory could ever state a due-process claim. Plaintiff therefore requests a disposition tailored to the identification defect, rather than a broader merits-preclusive ruling. He does not assert that identifying the custodian would automatically resolve the other due-process elements, including the governing procedure and any relevant available remedy.

Accordingly, Plaintiff requests that Count IX not be dismissed with prejudice. A more proportionate disposition would be limited leave to substitute the proper custodial entity/personnel upon identification, limited discovery directed to the custody chain if the Court finds it permissible, or dismissal without prejudice as to presently unidentified defendants.

**OBJECTION 9**

**THE COURT SHOULD ADDRESS THE EXISTING ALLEGATIONS BEFORE DISMISSING THE ENTIRE ACTION WITH PREJUDICE**

Finally, Plaintiff objects to the recommendation to dismiss the entire FAC with prejudice and without further leave because he has had several opportunities to amend. R&R at 13. Repeated failure to cure identified deficiencies is a proper reason to deny further leave. *Foman v. Davis,* 371 U.S. 178, 182 (1962); *Bryant v. Dupree*, 252 F.3d 1161, 1163-64 (11th Cir. 2001). Plaintiff does not claim entitlement to another unrestricted amendment. His principal request is

review of the allegations already in DE 50 under the proper standards; prior amendments do not independently defeat a count that now states a claim.

The issue is narrower. The operative FAC added and organized materially specific allegations that the R&R itself did not fully analyze: the Wellpath urgent bilateral neurological referral; the distinction between intake screening and provider-level resolution; continued ankle and wrist restraints through secure jail arrival; the multi-stage force/intervention sequence; and the objective facts surrounding the officers' post-shutoff release statements and continuing charge search. Those are not merely promises of facts Plaintiff hopes to add later; they are allegations already present in DE 50.

For any count that the Court finds plausible, Plaintiff requests rejection of dismissal and further proceedings. If a specific remaining defect is curable, he requests only targeted leave identifying the required correction; for the presently unidentified animal-custody defendants, he alternatively requests dismissal without prejudice. These alternatives do not ask the Court to excuse the pleading standard or to order discovery merely because records remain unavailable. They ask the Court to distinguish an existing sufficient claim, a defect that can be corrected, and a defect warranting a final merits disposition.

Plaintiff also specifically objects to the recommendation that his pending motion for U.S. Marshals Service, DE 39, be denied as moot. R&R at 13. If any claim is permitted to proceed, the request for service is not moot as to the defendants facing that claim. Plaintiff requests that the Court address DE 39 to that extent and direct the service appropriate for the surviving claims.

## CONCLUSION

Plaintiff respectfully requests that the District Court conduct de novo review of the specified portions of DE 51; reject dismissal of Counts II, III, IV, and VI to the extent the existing allegations state a claim; reconsider Count I if the probable-cause premise is rejected and separately review its alternative theory; reconsider Counts V and X if the force or restraint premise is rejected; assess Counts VII and VIII on their own policy/custom and causation allegations if the relevant underlying violation is plausibly pleaded; separately review Count IX's official-capacity theory and decline a with-prejudice disposition based solely on unresolved Doe identities; and grant only such targeted leave or dismissal without prejudice as the Court finds warranted. For any surviving claim, Plaintiff further requests that the Court decline to deny DE 39 as moot, address service on the appropriate defendants, and allow further proceedings.

Respectfully submitted,

____________________________________

NIHAL MICHAEL GAUTAM, Plaintiff pro se
1981 NW 43 Ter #362
Lauderhill, FL 33313
Telephone: 480-972-8577
Email: nihalg5555@gmail.com
Dated: 9/22, 2026